IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE CARGO OF THE SS ISLANDER, in rem,<br><br>TYCHE HIGH SEAS CAPITAL CORP.,<br><br>Movant. | ) ) ) ) No. 3:96-0270-HRH ) ) ) ) ) |

O R D E R

Motion to Intervene

Pacific Survey Group, LLC ("PSG") moves to intervene in this action.[1] This motion is opposed by Royal Sun Alliance ("RSA") and Tyche High Seas Capital Corp. ("Tyche").[2] Oral argument was not requested and is not deemed necessary.

Background

This case involves the salvage of the cargo of the S.S. ISLANDER. The gold shipment that was on board the ISLANDER is the legal property of Marine Insurance Company, which is "a subsidiary of" RSA.[3] Tyche is the current owner of the Contract

---

[1] Docket No. 338.

[2] Docket Nos. 344 and 345.

[3] Notice of Representation at 2, Docket No. 327.

Salvage Rights. PSG "is a marine operations group that provides research and support vessels to customers throughout North America[.]"[4]

In November 2019, Tyche entered into a charter party with PSG, "where [PSG] would provide the OCEAN TITAN to Tyche."[5] "The OCEAN TITAN was on charter to Tyche between November 29, 2019 and December 20, 2019."[6] The OCEAN TITAN was "chartered . . . in order to survey and explore the area where the SS ISLANDER is believed to be found outside of Juneau, Alaska . . . and to retrieve property items from the Wreck if possible."[7] The rights under the charter party are currently at issue in Pacific Survey Group, LLC v. Tyche High Seas Capital Corp., which is pending in the United States District Court for the Western District of Washington. In the Washington case, PSG seeks "payment for monies due under the charter party" and asks the court to "find that it has a maritime lien on the data collected during the charter party. . . ."[8] PSG contends that the charter party grants it "a stake in the ISLANDER Cargo" and that "Tyche granted" PSG "a lien on any property recovered from the" ISLANDER "as follows: [T]o the extent that [Tyche] legally can

---

[4]Salvor's Opposition to Motion to Intervene [etc.] at 2, Docket No. 345.

[5]Declaration of Lindsay Sckorohod in Support of Motion to Intervene at 2, ¶ 4, Exhibit B, Declaration of Donald K. McLean in Support of Motion to Intervene, Docket No. 339.

[6]Id. at 2, ¶ 6.

[7]Annex C to Time Charter Party for Offshore Support Vessels, Exhibit A at 34, Declaration of Forrest Booth, Docket No. 346.

[8]Complaint at 1, Exhibit A, McLean Declaration, Docket No. 339.

-2-

provide a lien right, the Owners [PSG] shall have a lien upon items found and recovered from the Wreck to the extent of amounts owed pursuant to th[e] Charter."[9] Tyche has asserted counterclaims against PSG for breach of contract, breach of the implied covenant of good faith, unfair business practices, and unjust enrichment.[10] Tyche contends that "it fulfilled all of its financial obligations to" PSG "under the terms of the Charter Party and that" PSG "failed to abide by terms of the agreement when" PSG "declined to turn over all survey data to Tyche and continues to wrongfully retain possession of certain data."[11] Tyche and PSG are currently engaged in discovery in the Washington case.

On April 7, 2022, Tyche moved to reopen this case because its "on-going operations require oversight by the Court, as detailed in the Court's 1998 Judgment in this case."[12] The court granted Tyche's motion to reopen the case on April 25, 2022.[13] On March 31, 2022, Tyche moved "to file its report detailing its survey, salvage, and recovery plan . . . under seal."[14] Tyche later moved to file its report ex parte so that it is "unavailable for the public or other parties to view until completion of Tyche's salvage operations that are the subject

---

[9]Sckorohod Declaration at 2-3, ¶¶ 7-8, Exhibit B, McLean Declaration, Docket No. 339.

[10]Exhibit C at 8-15, Booth Declaration, Docket No. 346.

[11]Salvor's Opposition to Motion to Intervene [etc.] at 2, Docket No. 345.

[12]Motion to Reopen Case at 3, Docket No. 335.

[13]Docket No. 337.

[14]Motion to File Document Under Seal at 1-2, Docket No. 329.

-3-

of this action."[15] Both Tyche's motion to file its report under seal and its ex parte motion were granted.[16] Tyche's recent status report is to remain sealed and in ex parte status and cannot be accessed or released to anyone unless so ordered by the court.

PSG now moves to intervene in this action.

## Discussion

PSG moves to permissively intervene and to intervene as a matter of right. The parties "agree that PSG's motion to intervene as a matter of right is premature and will not become ripe until some cargo from the wreck is recovered."[17] Thus, the only issue before the court is whether PSG should be allowed to permissively intervene.

In its reply brief, PSG clarifies that it is seeking "to permissively intervene in this case to allow it timely access to the reports filed by Tyche . . . for use in its litigation with Tyche in Seattle."[18] In other words, at present, PSG is not seeking to litigate any claims on their merits, but rather "is [only] requesting that it be allowed to intervene to gain access to

---

[15]Motion to File Document Ex Parte at 2, Docket No. 340.

[16]Docket Nos. 336 and 348.

[17]Reply in Support of Motion to Intervene at 4, Docket No. 347. See also, Opposition to Motion to Intervene at 1, Docket No. 344 (the matter of right portion of PSG's motion "will not become ripe until there is a recovery of gold"); Salvor's Opposition to Motion to Intervene [etc.] at 6, Docket No. 345 (PSG's motion to intervene as a matter of right "is untimely because it is premature" as "no cargo has been recovered" from the ISLANDER).

[18]Reply in Support of Motion to Intervene at 1, Docket No. 347.

-4-

documents filed under seal."[19] This makes PSG's motion for permissive intervention akin to a motion to intervene filed for the limited purpose of modifying a protective order.

"The Ninth Circuit permits a third party to use Rule 24 as a mechanism to intervene in order to seek the modification of a protective order or otherwise seek access to judicial records in civil cases." Phillips v. Goodyear Tire & Rubber Co., Case No. 02-1642B (NLS), 2007 WL 3245015, at *2 (S.D. Cal. Oct. 31, 2007) (citing Fed. R. Civ. P. 24; San Jose Mercury News, Inc. v. Dist. Ct., 187 F.3d 1096, 1100 (9th Cir. 1999); Beckman Inds., Inc. v. Int'l Ins. Co., 966 F.2d 470, 472-73 (9th Cir. 1992)). "Rule 24(b) permits permissive intervention for this purpose when there is a common issue of law or fact and the intervention will not prejudice or delay the action." Id.

In the Ninth Circuit, "the importance of access to documents prepared for similar litigation involving the same parties" can satisfy "the commonality requirement of 24(b)." Beckman Industries, 966 F.2d at 474. To meet this requirement, PSG must show that "there is a nexus between this action and" the Washington action. Phillips, 2007 WL 3245015, at *4.

Tyche argues that PSG cannot do so because PSG's claims have nothing to do with the ISLANDER and her cargo. Tyche contends that the Washington action is a breach of contract and debt collection action and thus has nothing to do with the recovery of or ownership of the cargo of the ISLANDER.

---

[19]Id. at 2.

But, there is a nexus between this action and the Washington action. As Tyche points out, this action involves the cargo of the ISLANDER. The charter party, which is the subject of the Washington action, affords PSG a lien "upon items found and recovered from the Wreck to the extent of amounts owed pursuant to th[e] Charter."[20] Plainly, PSG's claims against Tyche have something to do with the ISLANDER and her cargo. In addition, PSG contends that in the Washington action, Tyche has argued "that the Charter Party provided no benefit to its salvage efforts."[21] Tyche's report may undermine Tyche's position that the survey work done by the OCEAN TITAN in the area where the ISLANDER went down was worthless. Because there is a nexus between this action and the Washington action, PSG has met the commonality requirement in the context of a motion to intervene for the limited purpose of gaining access to sealed documents.

As for the prejudice and delay factors, RSA suggests that allowing PSG to intervene would unfairly prejudice Tyche, and by extension RSA, because PSG is a salvage company and "[a]s such it is potentially a direct competitor to Tyche and may have salvage plans of its own."[22] This, however, appears to be nothing more than speculation on the part of RSA, and as PSG points out, if it is allowed to intervene for the limited purpose of gaining access

---

[20]Sckorohod Declaration at 3, ¶ 8, Exhibit B, McLean Declaration, Docket No. 339.

[21]Motion to Intervene at 3, Docket No. 338.

[22]Opposition to Motion to Intervene at 2, Docket No. 344.

to Tyche's report, the court can limit what PSG can do with said report via an appropriate protective order.

As for any delay, allowing PSG to intervene to gain access to Tyche's report will not cause any delay because other than Tyche filing yearly status reports, nothing will happen in this case until and if the ISLANDER's cargo is found. Allowing PSG to intervene to gain access to the sealed Tyche report is not going to delay this case in any way.

In addition to the two foregoing factors, "the timeliness requirement for motions to intervene as a party applies, as well, to motions to intervene for ancillary purposes, like the modification of a protective order." Stokes v. Life Ins. Co. of North Amer., Case No. CIV 06–00411–S–LMB, 2009 WL 8397036, at *5 (D. Idaho Aug. 31, 2009) (citing Empire Blue Cross and Blue Shield v. Janet Greeson's A Place For Us, Inc., 62 F.3d 1217, 1219 (9th Cir. 1995)). In "determining whether a motion for intervention is timely, a court must consider three factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" San Jose Mercury News, 187 F.3d at 1100–01 (quoting League of United Latin Amer. Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir. 1997)).

RSA argues that PSG's motion is not timely because the debt which it seeks to secure is nearly three years old. Tyche argues that PSG's motion is not timely because it has not been established that any debt is owed by Tyche and because as of yet, no cargo from the ISLANDER has been recovered.

-7-

Case 3:96-cv-00270-HRH   Document 349   Filed 07/14/22   Page 7 of 11

These arguments miss the mark. PSG's motion for permissive intervention is timely because this case was only recently reopened and Tyche only recently filed its first status report.

But even though PSG has met the threshold requirements to intervene in this matter for the limited purpose of obtaining access to sealed documents, the court "has discretion to deny" PSG's motion for "permissive intervention." Donnelly v. Glickman, 159 F.3d 405, 412 (9th Cir. 1998). "In exercising its discretion, a court must consider whether intervention will unduly delay or prejudice the original parties and should consider whether the applicant's interests are adequately represented by the existing parties and whether judicial economy favors intervention." Miracle v. Hobbs, 333 F.R.D. 151, 156 (D. Ariz. 2019).

The original parties to this case are no longer involved in the case and thus allowing PSG to intervene will not unduly delay or prejudice them. And, as discussed above, allowing PSG to intervene will not cause any undue delay or prejudice to the existing parties. At present, no litigation is ongoing in this case. Rather, this case is in a holding pattern waiting results from Tyche's salvage efforts.

PSG's interest in gaining access to the sealed documents is not represented by any of the current parties. In fact, as set out above, the court has granted Tyche's motions to seal the current report and prevent access to it by anyone, including any other parties, unless the court orders otherwise.

As for judicial economy, Tyche argues that allowing PSG to intervene in this case will not promote judicial economy but rather will increase fees and costs since Tyche and PSG are currently litigating their claims against each other in the Washington action. Tyche seems to be contending that PSG could obtain the information in the sealed report via discovery in the Washington case.

While PSG could obtain the information in Tyche's report via discovery in the Washington case, it would be more efficient to allow PSG to intervene in this case for the limited purpose of gaining access to Tyche's recent report. The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1131 (9th Cir. 2003). The court has explained that "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." Id. Because Tyche has filed its status report in this action, this court is in a better position than the Washington court to determine whether PSG should be given access to Tyche's report.

In sum, PSG has met the Rule 24(b) commonality requirement and allowing it to intervene for the limited purpose of gaining access to Tyche's status report will not cause any prejudice nor will it delay this action. PSG's motion to intervene was timely, and none of the other factors the court considers in deciding whether to grant intervention weigh against

intervention. PSG's motion to intervene for the limited purpose of accessing Tyche's sealed status report is granted.

As a final matter, Tyche moves to strike the verified complaint that was attached to PSG's motion to intervene. In the verified complaint, PSG asserts a claim that it has a lien on the cargo of the ISLANDER and requests that it be "adjudged the holder of a maritime lien on the ISLANDER Cargo for payment of sums due" and that a "[j]udgment against ISLANDER Cargo" be entered "for all amounts due under the lien as may be found due and owing after trial[.]"[23]

PSG presumably attached the verified complaint to its motion to intervene because Rule 24(c) provides that a motion to intervene must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." But, given that PSG is now only seeking to intervene for the limited purpose of obtaining access to sealed documents, this complaint is irrelevant. Moreover, the verified complaint was filed as an exhibit, not a pleading, so it is not an active complaint.

## Conclusion

PSG's motion to intervene as a matter of right is denied as premature. PSG's motion for permissive intervention is granted. PSG will be granted access to Tyche's sealed status report as soon as an appropriate non-disclosure agreement is in place. Once PSG and Tyche

---

[23]Verified Complaint at 4, Exhibit A, Motion to Intervene, Docket No. 338.

have reached accord on a non-disclosure agreement, PSG shall file that agreement with the court for the court's approval. Once the court approves the non-disclosure agreement, PSG will be added as a party to this case for the limited purpose of accessing Tyche's June 2022 sealed report. Tyche's future status reports may be filed <u>ex parte</u> and under seal and will only be accessible to other parties, including PSG, if application is made to and approved by the court.

Tyche's motion to strike PSG's verified complaint is denied.

DATED at Anchorage, Alaska, this 14th day of July, 2022.

<u>/s/ H. Russel Holland</u>
United States District Judge